# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60564

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HOBER ACOSTA-NAVARRO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CR-81-1

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

After Hober Acosta-Navarro pleaded guilty to illegal reentry, the district court sentenced him to 18 months' imprisonment followed by a 3-year term of supervised release. Acosta-Navarro challenges the imposition of supervised release generally and two special conditions of supervised release. For the following reasons, we AFFIRM the judgment of the district court in part and VACATE in part.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60564

## I.

In 2018, Mississippi law-enforcement officers arrested Hober Acosta-Navarro, a Honduran citizen without authorization to be in the United States, for fishing without a license. Immigration and Customs Enforcement agents found Acosta-Navarro while he was detained and arrested him for illegally reentering the United States after having been previously deported. Acosta-Navarro later pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326.

Prior to this arrest, Acosta-Navarro had been convicted of possession with intent to distribute cocaine and was deported. Acosta-Navarro reentered the United States and was convicted of illegal reentry in 2010, after which he was deported again.

Based on his total offense level of 13 and criminal history category of III, the presentence report ("PSR") concluded that Acosta-Navarro's U.S. Sentencing Guidelines ("Guidelines") range of imprisonment was 18 to 24 months and the Guidelines range for supervised release was 1 to 3 years. The PSR also noted that per U.S. Sentencing Guidelines Manual § 5D1.1(c) (U.S. Sentencing Comm'n 2016), "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." Acosta-Navarro did not object to the PSR.

The district court adopted the PSR's findings and conclusions. At the sentencing hearing, the district court sentenced Acosta-Navarro to 18 months' imprisonment followed by a 3-year term of supervised release. The district court also imposed special conditions on the supervised release, two of which are at issue here: while on supervised release, Acosta-Navarro must (1) participate in alcohol or drug-abuse testing or treatment as directed by the probation office, and (2) submit his property, including his "electronic communications devices" to a search by a probation officer if the officer has a

No. 18-60564

"reasonable suspicion" that Acosta-Navarro has violated a condition of his supervision. In imposing the sentence, the district court explained that it "ha[d] considered the advisory guideline computations and the sentencing factors under 18, United States Code, Section 3553(a)."

Acosta-Navarro, through counsel, objected to the three years of supervised release under § 5D1.1(c), given that Acosta-Navarro would likely be deported after serving his prison sentence. He also objected to the two special conditions of supervised release discussed above. The court responded that "[it] would expect this defendant to be deported immediately upon his completion of his prison time. Those conditions will remain in the event that he is not deported."

Acosta-Navarro appeals the imposition of supervised release and the two aforementioned special conditions.

## II.

## A.

Acosta-Navarro first challenges the district court's imposition of supervised release, arguing that the sentence is unreasonable. "We review sentences for reasonableness by engaging in a bifurcated review." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 327 (5th Cir. 2012). At the first step, "we ensure that the sentencing court committed no significant procedural error, such as . . . 'failing to adequately explain the chosen sentence . . . .'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Next, we "consider the 'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Id.* (quoting *Gall*, 552 U.S. at 51). "If a defendant fails to properly object to an alleged error at sentencing, however, the procedural reasonableness of his sentence is reviewed for plain error." *Id.*

On appeal, Acosta-Navarro argues that his sentence is procedurally unreasonable because the district court did not make adequate findings to

3

support the imposition of supervised release. But at the sentencing hearing, Acosta-Navarro's counsel raised the following objection:

> For the record, Your Honor, I'd object to the three years of supervised release. Under sentencing guideline 5D1.1(c), normally, a court should not impose a term of supervised release where it is not required by statute and the defendant is a deportable alien.

This objection "sufficed to alert the district court of his disagreement with the substance of the sentence, but not with the manner in which it was explained. He could have asked the district court for further explanation during the sentencing hearing, but did not." *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009); *see also Dominguez-Alvarado*, 695 F.3d at 327-28 (finding objection to "term of supervised release that's imposed as an upward departure" was not objection to lack of explanation). Therefore, we review the procedural reasonableness of Acosta-Navarro's sentence for plain error. Under the plain error standard, we must determine "whether there was error at all; whether it was plain or obvious; whether the error affected the defendant's substantial rights; and whether this court should exercise its discretion to correct the error in order to prevent a manifest miscarriage of justice." *Dominguez-Alvarado*, 695 F.3d at 328.

We find that the district court adequately explained its imposition of supervised release. A district court must provide sufficient explanation "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Mondragon-Santiago*, 564 F.3d at 360 (quoting *Gall*, 552 U.S. at 50). "When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required." *United States v. Cancino-Trinidad*, 710 F.3d 601, 606 (5th Cir. 2013) (quoting *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005)).

The Guidelines advise that a court "ordinarily should not" impose supervised release on a defendant if it is not required by statute and the defendant is a deportable alien who is likely to be deported after imprisonment. U.S.S.G. § 5D1.1(c). But a district court may impose supervised release if it "determin[es] that [supervised release] would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *Cancino-Trinidad*, 710 F.3d at 606 (quoting *Dominguez-Alvarado*, 695 F.3d at 329); *see also* U.S.S.G. § 5D1.1 cmt. n.5. The district court's determination need not be lengthy, and we have affirmed the imposition of supervised release when the district court's comments "indicate implicit consideration of the deterrent effect of [supervised release]." *Cancino-Trinidad*, 710 F.3d at 607.

Here, the district court stated at sentencing that it considered the "advisory guideline computations and the sentencing factors under 18, United States Code, Section 3553(a)." The district court also adopted the PSR, which discussed § 5D1.1(c). The district court's adoption of the PSR supports an inference that the court "considered all pertinent sentencing considerations in imposing the sentence." *Id.* at 606 (quoting *United States v. Reyes-Serna*, 509 F. App'x 313, 314 (5th Cir. 2013) (unpublished)). And the district court reprimanded Acosta-Navarro for returning to the United States, telling him that he "should have learned that by now" and that when he returned to Honduras, he "need[s] to stay there." This statement indicates that the court considered the deterrent effect of its sentence. *See United States v. Kelly-Aguirre*, 518 F. App'x 316, 316 (5th Cir. 2013) (unpublished) (affirming supervised release when district court "was aware" of § 5D1.1(c) because it was included in PSR, which court adopted, and court made statements at sentencing addressing defendant's criminal history and need to protect public); *Dominguez-Alvarado*, 695 F.3d at 330 (noting that even under de novo review,

district court's statement that it "gave the sentence after looking at the factors in 3553(a), to deter future criminal conduct, [and considering] his particular background and characteristics, which apparently do not make him a welcome visitor in this country," was sufficient to "justify imposition of a term of supervised release").

Even if the district court had erred, Acosta-Navarro has not "show[n] that an explanation would have changed his sentence." *United States v. Chavez-Chum*, 768 F. App'x 247, 250 (5th Cir. 2019) (unpublished) (quoting *Mondragon-Santiago*, 564 F.3d at 365). His sentence was within the Guidelines range and therefore presumptively reasonable. *Id.* Accordingly, because Acosta-Navarro cannot show that "but-for the lack of explanation why supervised release was imposed, the district court would have made a different sentencing decision," his "substantial rights were not affected, [and] his claim fails under plain-error review." *Id.*

Acosta-Navarro's sentence is not substantively unreasonable either. Again, "a sentence within the Guidelines is presumed reasonable on appeal." *Mondragon-Santiago*, 564 F.3d at 360. "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). To the extent Acosta-Navarro argues that the district court did not afford sufficient weight to § 5D1.1(c), this argument is without merit. As discussed above, Acosta-Navarro raised his objection to the imposition of supervised release at sentencing and cited § 5D1.1(c). "Therefore, the court was made aware of the existence and text of the Guideline, and we can conclude it was 'implicitly' considered by the court and rejected." *Chavez-Chum*, 768 F. App'x at 252. Moreover, § 5D1.1(c) is "'hortatory, not mandatory,' leaving its ultimate

application to the discretion of the district court." *Id.* (quoting *Dominguez-Alvarado*, 695 F.3d at 329); *cf. United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) ("Appellate review is highly deferential as the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant."). Therefore, we find that the district court did not abuse its discretion in sentencing Acosta-Navarro to supervised release.

Because Acosta-Navarro has not demonstrated an error on the part of the district court, we affirm the district court's imposition of supervised release.

## B.

Acosta-Navarro also challenges the imposition of special conditions on his supervised release. A district court has "significant discretion in imposing conditions of supervised release." *United States v. Ramos-Gonzales*, 857 F.3d 727, 731 (5th Cir. 2017). But the district court's discretion is limited in two ways:

> First, the condition of supervised release must be "reasonably related" to one of four statutory factors: (1) the nature and characteristics of the offense and the history and characteristics of the defendant; (2) the need for deterrence of criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with vocational training, medical care, or other correctional treatment. Second, the condition must be narrowly tailored such that it does not involve a "greater deprivation of liberty than is reasonably necessary" to fulfill the purposes set forth in [18 U.S.C.] § 3553(a).

*United States v. Scott*, 821 F.3d 562, 570 (5th Cir. 2016) (alteration in original) (quoting *United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015)).

Although the district court must make factual findings that justify the special conditions, "a court of appeals may nevertheless affirm a special

condition 'where the [district] court's reasoning can be inferred after an examination of the record.'" *United States v. Caravayo*, 809 F.3d 269, 275 (5th Cir. 2015) (alteration in original) (quoting *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014)). Because Acosta-Navarro objected to the conditions before the district court, we review for abuse of discretion. *See Scott*, 821 F.3d at 570.

Both Acosta-Navarro and the Government argue that the court should vacate the special condition for drug testing. We agree. Although Acosta-Navarro was convicted for possession with intent to distribute, there is no evidence in the record that he personally used drugs. Nor did the district court explain why it imposed this condition. Therefore, we find that the district court abused its discretion and vacate the third special condition imposed on Acosta-Navarro's supervised release. *See Ramos-Gonzales*, 857 F.3d at 731-32 ("[W]here there is no relevant evidence of drug use, the essential characteristic of a defendant that makes surveillance for drug use reasonable and appropriate is absent.").

Acosta-Navarro also challenges the sixth special condition, which requires him to submit his electronic communication devices to searches by a probation officer. He argues that the special condition is not related to the nature of his offense or his history. But we have affirmed the imposition of such special conditions even when "nothing in the record indicates [the defendant] used a computer or other electronic device to commit his offenses," finding that the condition is "reasonably related to the sentencing goals of deterring future criminal conduct and protecting the public from [the defendant's] future crimes." *United States v. Sandford*, 583 F. App'x 426, 427 (5th Cir. 2014) (unpublished); *see also United States v. Balla*, 769 F. App'x 127, 128-29 (5th Cir. 2019) (unpublished) (affirming electronics-search condition for defendant convicted of being a felon in possession of a firearm and ammunition because

defendant's criminal history and sentencing goal of deterring future criminal conduct and protecting public justified special condition). Given Acosta-Navarro's criminal history, which includes multiple reentries and a conviction for possession with intent to distribute, and the district court's statements at sentencing suggesting that it intended to deter his future crimes, we find the condition reasonably related to the § 3553(a) factors. *See United States v. Hathorn*, 920 F.3d 982, 985-87 (5th Cir. 2019) (affirming electronics-search condition as "reasonably related" to defendant's conviction for possession with intent to distribute, his history of drug use, and need to deter criminal conduct and protect public).

We also find that the condition is sufficiently tailored so that it "does not involve a 'greater deprivation of liberty than is reasonably necessary.'" *Scott*, 821 F.3d at 570 (quoting *Duke*, 788 F.3d at 398). Although Acosta-Navarro protests that the condition will permit unfettered access to his private information, the probation officer may only search Acosta-Navarro's electronic communication when "reasonable suspicion exists that [Acosta-Navarro] has violated a condition of his supervision," and the search may only be conducted "at a reasonable time and in a reasonable manner." "[T]he possibility of intermittent searches [is not] too much of a burden on [Acosta-Navarro's] already reduced liberty interest in light of his prior criminal history."[1] *Balla*, 769 F. App'x at 128 (second alteration in original) (quoting *United States v.*

---

[1] Acosta-Navarro also argues that there is no Sentencing Commission policy statement contemplating warrantless searches of communications devices for non–sex offenders. Although special conditions "must be consistent with the policy statements issued by the Sentencing Commission," *United States v. Weatherton*, 567 F.3d 149, 153 (5th Cir. 2009) (citing 18 U.S.C. § 3583(d)(3)), we have also recognized that the absence of a policy statement "does not cabin a district court's discretion." *Hathorn*, 920 F.3d at 987 (rejecting argument that because policy statements only mention drug treatment, district court could not also impose other special conditions). Furthermore, as described above, we have affirmed electronic-search conditions even when the underlying conviction is not a sex crime.

No. 18-60564

*Winding*, 817 F.3d 910, 917 (5th Cir. 2016)); *see also Hathorn*, 920 F.3d at 986-87.

For these reasons, we find the district court did not abuse its discretion in imposing the electronic-search special condition.

## III.

We AFFIRM the judgment of the district court imposing supervised release and the electronics-search special condition, but we VACATE the drug-surveillance special condition.